**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 5:24-CR-00017-GFVT-MAS |
| ) | |
| DESHAWN HOWARD, ) | |
| ) | |
| Defendant. ) | |

**DETENTION OPINION AND ORDER**

The Defendant Deshawn Howard ("Howard") originally came before the undersigned on a Criminal Complaint. [DE 1]. The United States properly moved for detention under 18 U.S.C. § 3142(f)(1)(C). Howard came before the undersigned for a combined Preliminary Hearing and Detention Hearing, during which he waived his right to a preliminary hearing. After considering the record—including testimony, proffer, and arguments—the Court granted the United States' motion and ordered that Howard be detained pending trial. [DE 7]. This Opinion and Order memorializes the Court's reasons for detaining Howard in compliance with the Bail Reform Act ("BRA").

**I. FACTS AND PROCEDURAL HISTORY**

According to the Criminal Complaint [DE 1], Howard was allegedly involved in criminal activity related to drug trafficking spanning several months and leading

to the identification of 3517 Honey Jay Court, Lexington, KY ("3517 Honey Jay Court"), as a hub for drug trafficking activities. Over an extended period, spanning from December 2022 to September 2023, law enforcement surveillance, including both electronic monitoring and physical observation, revealed frequent, short-duration visits to the residence by Howard and others.

On June 13, 2023, law enforcement obtained a search warrant to install a GPS tracking device on Howard's 2019 Ram truck, which was executed on July 6, 2023. On June 19, 2023, during electronic surveillance near 3517 Honey Jay Court, Howard was observed arriving and entering the residence. Shortly after, various unidentified individuals arrived in different vehicles and entered the residence, engaging in brief stays and exchanges, including Howard, who was seen carrying a medium-sized box to and from a parked black car before leaving with it in his Ram. Howard was later observed traveling to Lexington, where he exhibited behavior indicative of conducting counter-surveillance, such as walking around the neighborhood while on the phone and approaching an undercover law enforcement vehicle, which led investigators to terminate surveillance.

On August 30, 2023, prior to executing a search warrant at 3517 Honey Jay Court, law enforcement observed individuals believed to be Howard and Johnson arriving and entering the residence. Before the warrant execution, electronic surveillance captured Howard walking towards his vehicle, though he left the field of view before reaching it. Upon law enforcement's approach, the area was secured, preventing escape by vehicle due to the residence's cul-de-sac location. The search

yielded approximately 96 grams of suspected fentanyl, 13 pounds of suspected marijuana, and two firearms.

Since Howard came before the undersigned for an initial appearance on the allegations in the Criminal Complaint, he has been indicted by a federal grand jury for conspiring to distribute 40 grams or more of fentanyl in violation of 21 U.S.C. § 846.  [DE 1].  He was arraigned on February 27, 2024.  [DE 13].

## II.  LEGAL FRAMEWORK

Given the charge, a detention presumption arises under the Bail Reform Act, 18 U.S.C. § 3141, *et seq.*, ("BRA") as to both nonappearance and danger risk.  18 U.S.C. § 3142(e)(3)(A).  Accordingly, a defendant carries a "burden of production" to overcome the presumption by offering "at least some evidence" that he is neither at risk of nonappearance nor endangering the community.  *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010).  The production burden "is not heavy," and the Government retains the ultimate burden of persuasion.  *Id.*  If the defendant fails to rebut the presumption, he must be detained.  Even if the defendant rebuts the presumption, the presumption remains a factor in determining detention.  *Id.* ("The presumption remains as a factor because it . . . reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial.").

However, if a defendant rebuts the presumption of detention, the burden shifts back to the United States to persuade the Court that detention is nevertheless warranted.  Detention, based on danger, must rest on facts supported by clear and convincing evidence. 18 U.S.C. § 3142(f).  A flight-based (or, more accurately, nonappearance-based) detention decision must rest on facts supported by a

3

preponderance of evidence.  *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, No. 6:06-82-DCR, 2006 U.S. Dist. LEXIS 49661, 2006 WL 2037406, at *6 (E.D. Ky. Jul. 18, 2006).  Further, almost any conditional release ultimately depends on a court's assessment of a defendant's good faith intentions and predicted compliance with conditions imposed.  *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (evaluating predicted good faith compliance as critical release component).

Evidence rules do not apply in the detention hearing context. 18 U.S.C. § 3142(f).  The hearing is informal, and the Court may consider a wide range of proof, weighing the evidentiary reliability and accuracy.  *See, e.g.*, *United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291 [published in full-text format at 1998 U.S. App. LEXIS 13553], 1998 WL 381686, at *1 (6th Cir. June 22, 1998).  The nature and quality of proof impacts its probative value and weight in the detention calculus.  The § 3142(g) factors guide the analysis.[1]

---

[1] The subsection directs the Court to balance the following:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including--
> > (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> > (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release

## III. ANALYSIS

The Court conducted a Detention Hearing and afforded both sides all procedural rights outlined in the BRA. [DE 7]. Below, the Court shall consider all testimony, proffer, and arguments from the parties to assess whether Howard has overcome the presumption of detention and, if so, whether the United States met its burden of persuasion that the § 3142 factors demand detention.

### A. RISK OF NONAPPEARANCE

Preliminarily, the Court finds that Howard overcame the presumption as to his risk of nonappearance. The testimony offered by his mother, Deanna Cason, offered some evidence that Howard would be present for future court appearances if granted pretrial release. She testified that during previous instances Howard has been released on bond, he has stayed with her, and she has personally assured he appeared for court. Compelling as well was counsel's proffer that Howard, upon learning that the Kentucky Supreme Court denied discretionary review of his state criminal appeal, turned himself in to authorities instead of fleeing. This evidence satisfies Howard's burden of production to overcome the presumption of detention.

However, as the Court detailed on the record during the Detention Hearing, Howard's history presents some concerns regarding his risk of non-appearance. As

---

described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

indicated in his Pretrial Services Report ("PSR"), Howard has several traffic-related failures to appear dating back to 2011. While noted, these instances do not weigh heavily in the Court's analysis. *United States v. Munoz-Hernandez*, No. CR 12-0128 JB, 2012 WL 5476892, at *11 (D. N.M. Nov. 5, 2012) ("The Court can see that it may be more likely that a defendant would forget about a court date for a traffic violation than for a felony charge, for which the defendant faces a minimum of ten years' imprisonment."). But the Court does consider Howard's failure to appear for an arraignment for state charges underlying this case, as noted in Howard's PSR. Further, it is of concern that upon Howard's release from prison in 2017, less than a year later, he was in state court again on drug trafficking charges and being a felon in possession of a firearm.

Taken together, Howard's history does suggest he could be a risk of nonappearance, but the United States did prove as much by preponderant evidence. Moreover, the Court could feasibly craft conditions to mitigate any risk of nonappearance, such as home incarceration or the use of a monitoring device.

B.  **RISK OF DANGER**

Howard did not successfully rebut the presumption of detention as to his risk of danger to the community. As the Court indicated on the record, of grave concern are the facts detailed in the Criminal Complaint and elaborated upon by Detective Brian Cobb during the Detention Hearing. Between July and August 2023, Detective Cobb testified that, during its investigation into suspected a drug trafficking headquartered at 3517 Honey Jay Court, law enforcement observed Howard's car parked near the residence around 107 times in a two-month period. The premises

search of 3517 Honey Jay Court revealed no signs of being lived in, but law enforcement did discover firearms and duffle bags full of controlled substances, including fentanyl.

At the Detention Hearing, there was also conflicting testimony regarding where Howard had been living.  While the PSR and his mother's testimony indicated Howard lived with his mother, Detective Cobb suggested that he resided a totally separate address.  Regardless, testimony did confirm that Howard spent much of his time in July and August at 3517 Honey Jay Court and that he had a key to the residence.  The discrepancies regarding his residence and how he occupies his time do not assure that Court that, even if conditions were imposed to mitigate his potential dangerousness, Howard would abide by court-ordered conditions.

In sum, the PSR, testimony, and proffer paint a picture of dangerousness.  Although he has offered some evidence that he would not pose a danger to the community, Howard did not meet his burden of production.  Thus, Howard failed to overcome the presumption of detention as to his risk of danger to the community.

## IV.    CONCLUSION

Ultimately, the Court finds that the United States failed to prove by a preponderance of evidence that Howard is a risk of nonappearance.  Separate and apart from Howard's risk of nonappearance, the Court finds that Howard failed to meet his burden of production to rebut the presumption of detention as to his risk of danger to the community.  Accordingly, the Court **GRANTS** the United States' oral detention motion.   As the BRA mandates in this case, Howard shall remain in custody pending trial.

The parties may appeal this Order under the terms of 18 U.S.C. § 3145(a).

Entered this 28th of February, 2024.

*[Signature: Matthew A. Stinnett]*

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY