UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION LEXINGTON

| | |
|---|---|
| UNITES STATES OF AMERICA,<br><br>　　Plaintiff,<br><br>v.<br><br>DESHAWN MAURICE HOWARD,<br><br>　　Defendant. | CRIMINAL NO. 5:24-17-KKC-MAS-2<br><br><br><br>**OPINION & ORDER** |

*** *** ***

The matter is before the Court on Defendant Deshawn Howard's motion to dismiss the superseding indictment. (DE 72.) To support his motion, Howard argues the superseding indictment is the result of vindicative prosecution and that he has suffered prejudicial preindictment delay. (*Id.* at 1.) The Court, having reviewed the parties' briefs and relevant law, will deny Howard's motion.

**I.　Background**

On August 30, 2023, law enforcement officers executed a search warrant at 3517 Honey Jay Court in Lexington, Kentucky. Officers seized seven items during the execution of that warrant suspected to be controlled substances. While the house was being searched, a certified drug detection dog made a positive alert to a truck parked outside belonging to Howard. The officers subsequently searched the truck and seized a set of keys and processed the keys as evidence. Officers later discovered that one of the keys unlocked a door to the Honey Jay residence.

Law enforcement sent the seven items seized during the search of the Honey Jay residence to the Kentucky State Police ("KSP") lab for testing. The initial lab report was

1

completed in October 2023, but only tested one of the seven items submitted. Item 1, which formed the basis for the initial indictment, tested positive for fentanyl. On February 22, 2024, Howard was formally indicted for conspiracy "to distribute and possess with intent to distribute a mixture of substance containing 40 grams or more of fentanyl." (DE 1.)

One week after the indictment was issued, Howard filed a motion to suppress the keys seized by the officers from his truck. (DE 17.) While his motion was pending, law enforcement re-submitted the previously untested items to the KSP lab.

On April 1, 2024, the magistrate judge issued a Report and Recommendation recommending that Howard's motion to suppress be granted. (DE 26.) One month later, the KSP lab completed a report on the previously untested items seized from the Honey Jay residence. The report confirmed the presence of more fentanyl, cocaine, heroin, and marijuana. The superseding indictment was returned a short time later, bringing additional charges against Howard based on the new KSP lab results. (DE 56.)

On June 12, 2024, the Court adopted the magistrate judge's Report and Recommendation and granted Howard's motion to suppress the set of keys. (DE 71.) Howard filed this motion a few weeks later, believing the Government's decision to prosecute him for the additional charges to be the result of his decision to assert his procedural right to have the keys suppressed. (DE 72.)

## II. Analysis

### A. Prosecutorial Vindictiveness

The Due Process Clause of the Fifth Amendment prohibits the government from prosecuting a defendant to punish him for exercising a legally protected right. *United States v. Goodwin*, 457 U.S. 368, 372 (1982); *United States v. LaDeau*, 734 F.3d 561, 566 (6th Cir. 2013). A defendant can establish that a prosecution is vindictive in one of two ways. "First, a defendant may demonstrate 'actual vindictiveness,' *i.e.* he may establish

through objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights." *Bragan v. Poindexter*, 249 F.3d 476, 481 (6th Cir. 2001). Howard does not purport to have such objective evidence of vindictiveness.

The second way of proving a vindictive prosecution is by demonstrating "a realistic likelihood of vindictiveness." *Id*. A defendant may establish a reasonable likelihood of vindictiveness with evidence that "(1) the prosecutor has 'some stake' in deterring the petitioner's exercise of his rights and (2) the prosecutor's conduct was somehow 'unreasonable.'" *Id*. (quoting *United States v. Anderson*, 923 F.2d 450, 453 (6th Cir. 1991)). It is the defendant's burden to prove (1) the prosecutor's "stake" and (2) the "unreasonableness" of the prosecutor's conduct. *LaDeau*, 734 F.3d at 566. If the defendant carries their burden, a presumption of vindictiveness is created, and the burden shifts to the government to disprove vindictiveness. *Id*. For the following reasons, Howard is unable to carry his burden and thus no presumption of vindictiveness applies.

1. **The prosecutor's "stake" in Howard's motion to suppress.**

A presumption of vindictiveness requires proof that a prosecutor had some stake in deterring the defendant's exercise of their right(s). *Anderson*, 923 F.2d at 453. The Sixth Circuit has remarked that "routine pretrial motions do not generally provide a sufficient basis for vindictiveness," and that "it is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter." *United States v. Zakhari*, 85 F.4th 367, 381-82 (6th Cir. 2023) (citing *Goodwin*, 457 U.S. at 381). However, a sufficient prosecutorial stake has been found in pretrial motions to suppress evidence when such motions present a "grave threat" to the prosecution's case. *Zakhari*, 85 F.4th at 382 (sufficient prosecutorial stake found in defendant's pending motion to suppress a crucial

3

confession); *LaDeau*, 734 F.3d at 569 (sufficient prosecutorial stake found in defendant's successful motion to suppress which "eviscerated" the government's case).

Here, Howard's motion to suppress the keys is the kind of "routine pretrial motion," that does not provide a sufficient prosecutorial stake for vindictiveness. To obtain a conviction, the Government would presumably need to present evidence at trial that connects Howard to the alleged drug operation at the Honey Jay residence. And the keys likely would help prove that connection. However, the keys are not the only evidence the Government has to prove Howard's affiliation with the Honey Jay residence. In its brief, the Government alleges Howard was "observed going into and out of the residence and his vehicle had been at the residence 72 times." (DE 81 at 15.) Further, the Government avers that subsequent investigations revealed "video evidence of Howard using a set of keys on the side door of the Honey Jay residence." (*Id.*) Thus, in contrast to the evidence being suppressed in *Zakhari* and *LaDeau*, suppression of the keys here did not pose a "grave threat" to the Government's case. Rather, as the Government persuasively argues, "the keys initially seized from the vehicle are now immaterial to the proof of the United States as there is now video evidence of Howard entering through the door." (DE 81 at 15.)

 2.  **The reasonableness of the prosecutor's conduct.**

As to the reasonableness inquiry, courts must be careful about judging prosecutorial reasonableness during pretrial proceedings because "prosecutors may 'uncover additional information that suggests a basis for further prosecution.'" *Zakhari*, 85 F.4th at 381 (quoting *Goodwin*, 457 U.S. at 381). For example, a prosecutor who **adds** extra charges after a defendant exercises one of their procedural rights acts less vindictively than a prosecutor who **substitutes** a more severe charge for the original, less severe charge. *United States v. Andrews*, 633 F.2d 449, 454 (6th Cir. 1980). In the former instance, the prosecutor may have made an honest mistake or discovered new facts since the original

4

indictment. *Id*. In the latter instance, the inference of vindictiveness is stronger because the prosecutor "will have already exercised his discretion." *Id*.

Here, the Government's decision to seek additional charges against Howard was reasonable. Simply put, the superseding indictment was a response to the discovery of new evidence rather than Howard's motion to suppress. Howard has brought no objective evidence to the Court's attention to lead to another result. Recall the timeline. Howard filed his motion to suppress on February 29. On April 1, the magistrate judge recommended Howard's motion to suppress be granted. On May 1, the KSP lab completed a report which showed items from the Honey Jay residence tested positive for additional controlled substances. On May 23, while Howard's motion to suppress was still pending in this Court, the superseding indictment was returned by the grand jury. Thus, this case represents the quintessential situation where the discovery of new evidence prompts a prosecutor's decision to seek additional charges.

The Court recognizes that the superseding indictment created new charges against Howard and could theoretically lead to an enhanced penalty if he is convicted. However, in this case, that reality does not push the needle towards unreasonable prosecutorial conduct. Had the prosecutor here substituted the original count for a more severe charge, that would be indicative of unreasonable prosecutorial conduct. *Andrews*, 633 F.2d at 454. However, here, the prosecutor merely added new charges due to the discovery of new evidence. Such conduct is not indicative of unreasonable prosecutorial conduct. *Id*. Of course, the change in the severity of Howard's potential penalty could have been avoided altogether had the Government simply waited on the investigation to be fully completed before seeking the initial indictment. However, the Government was not required to do so, and its decision to bring the superseding indictment in this case was reasonable.

In summation, Howard has failed to demonstrate a "realistic likelihood of vindictiveness." First, the prosecutorial stake in Howard's motion to suppress was low given the additional evidence held by the Government which tethers Howard to the Honey Jay residence. Second, the addition of new charges in the superseding indictment was reasonable given the new KSP lab results. Accordingly, the theory of prosecutorial vindictiveness does not justify dismissing the superseding indictment in this case.

### B. Prejudicial Preindictment Delay

Under the Fifth Amendment's Due Process Clause, an indictment must be dismissed if "pre-indictment delay [] caused substantial prejudice to [the accused's] rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." *United States v. Marion*, 404 U.S. 307, 324 (1971) (cleaned up). Pre-indictment delay must cause the accused to suffer "actual and substantial prejudice," for a dismissal of the prosecution to be appropriate. *United States v. Copley*, 774 F.2d 728, 730 n.2 (6th Cir. 1985). Here, Howard vehemently argues the Government's delay in charging the offenses in the superseding indictment is unjustified and "an 'attempt to gain a tactical advantage.'" (DE 72 at 7.) But Howard's motion fails to address the crucial issue, that is, what "actual and substantial prejudice," the Government's delay has caused his right to a fair trial. Howard seems to concede his inability to prove prejudice by asking the Court for leave to prove prejudice after receiving additional discovery. (*Id.*) However, on the current motion, the Court has no grounds to grant Howard's request for additional time. If new discovery provides Howard with grounds to prove prejudice, he can file an appropriate motion with the Court at that time. Accordingly, the Fifth Amendment's Due Process Clause does provide grounds that warrant dismissing the superseding indictment here.

### III. Conclusion

For the foregoing reasons, the Court hereby ORDERS as follows:

1. Howard's Motion to Dismiss Superseding Indictment (DE 72) is DENIED.

This 4th day of October, 2024.

*Karen K. Caldwell*
KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY